No. 90-019

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

TRAD INDUSTRIES, LTD.,
A Canadian Corporation,

      Plaintiff, Respondent and
        Cross-Appellant,

-vs-

WELCH E. BROGAN,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Sixth Judicial District,
               In and for the County of Park,
               The Honorable Byron L. Robb, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Richard L. Kalar, Attorney at Law, Emigrant, Montana

      For Respondent:

      Kent R. Douglass; Swandal & Douglass, Livingston,
      Montana

**FILED**

JAN 22 1991

Filed: *Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  August 23, 1990

Decided:  January 22, 1991

Clerk

Justice Diane G. Barz delivered the Opinion of the Court.

Defendant and appellant Welch E. Brogan appeals the judgment awarded plaintiff and respondent Trad Industries, Ltd. following a non-jury trial in the District Court of the Sixth Judicial District, Gallatin County. Trad Industries cross-appeals. We affirm.

Brogan raises the following issues on appeal as framed by this Court:

1. Did the District Court allow testimony in violation of the parol evidence rule?

2. Did the District Court err in enforcing the oral agreement extending the cut-off dates of the written contracts?

3. Is there substantial credible evidence to support the District Court's findings of fact?

4. Did the District Court err by awarding Trad Industries damages for all 82 contracted for?

Trad Industries raises one additional issue on cross-appeal:

Did the District Court err in denying Trad Industries exemplary damages?

Defendant Welch E. Brogan operates the Cinnabar Game Farm located at Corwin Springs, Montana and has been engaged in the game farming business for over forty years. On December 14, 1986, Brogan and Trad Industries (Trad), a Canadian corporation located in Handel, Saskatchewan, entered into the first of the two contracts which form the basis of this action. This first Brogan-Trad contract was for the sale of fifty cow elk at a price of

$1,750 each and ten heifer calves at $1,000 each, United States funds. The agreement included terms stating that, "Only animals that pass the required tests for export to Canada will be purchased" and that "Welch E. Brogan shall pay for all quaranteen [sic] and testing of the animals contracted for, before April 1st., 1987, the cut-off date of this agreement." Trad paid Brogan a deposit of $19,500 to be applied toward the total purchase price of $97,500.

On December 19, 1986, Brogan sold to Trad twenty-seven cow elk for $1,750 each. These animals were not part of the fifty cow elk which were the subject of the first Brogan-Trad contract. Trad paid the entire purchase price of these elk at the time of sale.

On December 21, 1986, Brogan executed a receipt to Carden Farms, another Canadian buyer, for payment of 150 elk with 149 delivered and 51 remaining of 200 elk contemplated under two Brogan-Carden Farms contracts. That same day Brogan and Carden Farms entered into a third contract. Brogan agreed that in exchange for an additional $25,000 paid by Carden Farms, Carden Farms would have a right of first refusal on all future elk for a period of one year with the exception of 50 cow elk committed to Trad and elk that Brogan would keep for his home herd.

Eight days after entering into the third agreement with Carden Farms, Brogan, on December 29, 1986, entered into another contract with Trad for an additional thirty-two cow elk at $1,750 each. This agreement was substantially the same as their first contract but included a May 1, 1987 cut-off date. Trad paid a deposit of $11,200 toward the purchase price of $56,000.

3

According to the testimony of Ron Loerzel, the president of Trad Industries, Trad entered into a number of contracts with third parties for the resale of the elk it was to receive under the contracts with Brogan. Ron Loerzel also testified that Brogan was made aware of the negotiations with third-parties to resell the elk.

During January through March, 1987, Trad telephoned Brogan on approximately fourteen separate occasions regarding Brogan's progress toward having the elk ready for delivery to Trad. Testimony elicited at trial shows that Brogan stated that the next 51 elk would be for Carden Farms but he expressed a clear intention to perform the contracts and assured Trad that he would have elk available to fulfill their contracts. In later telephone conversations Brogan stated some of the elk would be available for delivery to Canada after the cut-off dates set forth in the contracts.

On March 24, 1987, Ron Loerzel and his brother Terry Loerzel met with Brogan in Montana. Conflicting testimony was presented as to what occurred during this meeting. Brogan testified that he offered to refund Trad's deposits. The Loerzels testified, and the District Court found, that Brogan again stated that he would deliver the elk pursuant to the contracts, however, delivery dates would be pushed back to late April and mid to late May, 1987.

Throughout this time period, Brogan continued with the difficult testing procedure necessary to secure the USDA health certificate required by Canadian officials to allow the import of elk into that country. In order to bring elk into Canada, the elk

must be free of four diseases: tuberculosis, brucellosis, anaplasmosis and blue tongue. Tests for these diseases are conducted by drawing blood samples from each animal and submitting the samples to a laboratory for analysis.

Upon undergoing the first series of tests, each elk is fitted with a permanent ear tag with a number which serves to identify that animal throughout the testing process. When a group of elk is tested, the group must be held apart from other elk pending receipt of the test results. If those elk all pass the series of tests, they then remain isolated for a period of sixty days, after which they are administered the same series of tests for a second time. If they pass the second series of tests, the USDA issues its health certificate and Canadian authorities will allow their import. The animals must cross the Canadian border within thirty days after issuance of the health certificate. If an individual elk fails one or more of the tests, it is held back from the group. Thereafter, the group may start the testing cycle over again after a waiting period of thirty days.

On March 27, 1987, Trad's attorney sent a letter to Brogan inquiring as to his intentions of performing the contracts and indicating Trad would file a lawsuit for lost profits if Brogan did not perform. On April 1, 1987, Brogan sent a letter to Trad returning the $30,700 deposited with him and stating that he considered all sales to Trad closed.

On April 6, 1987, Trad filed its complaint in the District Court seeking specific performance of the two Brogan-Trad contracts, or in the alternative, an award of damages for breach

5

of contract. Trad also sought exemplary damages for breach of the implied covenant of good faith and fair dealing.

After a non-jury trial the District Court found that Brogan breached the contracts and awarded Trad lost profits on the resale of the 82 cow elk contracted for, such profits amounting to $102,103.10, together with costs of $279.90. The District Court denied Trad exemplary damages.

From this judgment Brogan appeals and Trad cross-appeals.

The first issue raised on appeal is whether the District Court allowed testimony in violation of the parol evidence rule. Brogan argues the District Court erred in allowing testimony regarding the representations he made to Trad at the time of contracting that he had 150 cow elk to sell, most of which would be ready for final testing for export to Canada in February, 1987 and that a proposed contract for the sale of the elk had been found unacceptable by Brogan. Brogan also argues the court erred when it allowed testimony regarding telephone conversations between Trad and Brogan from January through March of 1987 in which Brogan expressed his intention to perform the contracts, even if past the cut-off dates of the contracts.

The subject of the Brogan-Trad contracts was the sale of elk which come within the Uniform Commercial Code definition of "goods." See, § 30-2-105(1), MCA. Thus, the sale of the elk is governed by the Code and the Code provisions must be given primary consideration, with the law of contracts being used only to supplement the Code provisions. Norwest Bank Billings v. Murnion (1984), 210 Mont. 417, 422-23, 684 P.2d 1067, 1070. The relevant

statute addressing parol evidence is § 30-2-202, MCA:

> **Final written expression--parol or extrinsic evidence.** Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:
>
> (a) by course of dealing or usage of trade (30-1-205) or by course of performance (30-2-208); and
>
> (b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

Section 30-2-202, MCA, provides that terms of the written contract cannot be contradicted by representations or negotiations which occurred prior to or contemporaneous with the written agreement. The telephone conversations are not barred by the parol evidence rule. These occurred <u>after</u> the writings and pertain to Trad's assertion that the contracts were subsequently modified. As for the proposed contract, no evidence of the terms of that proposed contract was entered into the record but was referred to merely to provide a foundation for the introduction of the two Brogan-Trad contracts. The District Court did not err in allowing this testimony.

The language of the two written contracts is clear and unambiguous. There are no terms within these contracts which state that Brogan had 150 cow elk to sell and that most of those elk would be ready for final testing for export to Canada in February,

1987. Therefore, the fact there may have been further oral understandings between the parties is barred by the parol evidence rule and the District Court's admission of this evidence was error. However, because we conclude that, disregarding these oral representations, there is substantial credible evidence in the record to support the findings of the District Court, the admission of this testimony does not constitute reversible error.

The second issue raised on appeal is whether the District Court erred in enforcing the oral agreement extending the cut-off dates of the written contracts. The District Court found in findings of fact 32 and 33 that during the telephone conversations from January through March of 1987 and again in a face-to-face meeting on March 24, 1987, that Brogan assured Trad he intended to fulfill the contracts even if deliveries fell beyond the cut-off dates in the written contracts, thereby extending the cut-off dates of the contracts.

Brogan, citing § 28-2-1602, MCA, argues that a written contract may only be altered by another written contract or by an executed oral agreement, which did not occur in this case. Brogan correctly states the law of contracts regarding modification of written contracts, however, as stated earlier, the Brogan-Trad contracts are governed by the Uniform Commercial Code.

The relevant Code provision regarding modification of an existing contract is § 30-2-209, MCA. Section 30-2-209(2), MCA, allows for the oral modification of a contract unless otherwise indicated by the parties:

> A signed agreement which excludes

8

> modification or rescission except by a signed writing cannot be otherwise modified or rescinded. . . .

Neither of the contracts between the parties contained a no oral modification clause.

Section 30-2-209(3), MCA, further requires that the statute of frauds, § 30-2-201, MCA, must be satisfied if the contract, as modified, is within its provisions. That is the situation in the present case. However, § 30-2-209(4), MCA, provides that an attempt at modification that does not satisfy the requirements of subsection (3) can operate as a waiver of the right to assert a defense under the statute of frauds. See also, Farmers Elevator Co. v. Anderson (1976), 170 Mont. 175, 552 P.2d 63. The evidence in the record reveals a course of conduct by Brogan sufficient to estop him from insisting upon the enforcement of the original cut-off dates in the written contracts. Brogan repeatedly, in numerous telephone conversations and in a face-to-face meeting with Trad's representatives, assured Trad that the elk contracted for would be available even if past the cut-off dates contained in the written agreements. Trad justifiably believed it did not need to find replacement elk to fulfill its contracts with third-parties and subsequently lost profits it would have obtained on the resale of the elk. When a promisee reasonably and foreseeably relies on a promise to his detriment the promise is binding if injustice can be avoided only by enforcement of the promise. Keil v. Glacier Park, Inc. (1980), 188 Mont 455, 462, 614 P.2d 502, 506, (citing § 90 of the Restatement (Second) of Contracts).

We hold the District Court did not err in enforcing the oral

9

agreement extending the cut-off dates of the written contracts between the parties.

The third issue raised on appeal is whether there is substantial credible evidence to support the District Court's findings of fact. At trial, Brogan contended that he never guaranteed he would have elk that would pass the required tests for export and asserted that it was impossible to fulfill the contracts before the cut-off dates because he did not have the animals and because a herd of 300 elk from Missouri delivered to his game farm on March 19, 1987 arrived in a very malnourished and diseased condition which delayed testing of all the elk on the game farm past the cut-off dates of the contracts. The District Court found that Brogan presented insufficient evidence to show it was impossible to perform the contracts before the cut-off dates of the contracts. It found that Brogan had elk available which could have been used to fulfill the contracts but he failed to do so by unjustifiably selling elk to third-parties and keeping others for his home herd. The court further found Brogan had repeatedly assured Trad that he intended to perform the contracts even if delivery ran past the cut-off dates, but had failed to do so. Finally, the court found Trad had entered into a number of contracts to resell the elk contracted for with Brogan and following Brogan's letter of April 1, 1987, Trad made numerous attempts to obtain substitute elk to satisfy these contracts but was unsuccessful, thereby suffering damages of lost profits.

This Court's standard of review of findings of fact in a civil action tried by a district court without a jury is whether or not

the district court's findings are clearly erroneous; this Court will not substitute its judgment for that of the district court absent that showing, even where there is evidence in the record to support contrary findings. Dennis v. Tomahawk Services, Inc. (1989), 235 Mont. 378, 379, 767 P.2d 346, 347. In addition, erroneous findings of fact that are not necessary to support the judgment of the district court are not grounds for reversal. Eaton v. Morse (1984), 212 Mont. 233, 244, 687 P.2d 1004, 1010. Brogan points out that part of the evidence in the record is documentary evidence and asserts that this Court is in as good a position as the District Court in judging the weight to be given to that evidence. Although Brogan is correct in his assertion, this Court will nevertheless uphold the lower court if there is substantial credible evidence to support the lower court's determination. Sciuchetti v. Hurt Const. (1989), 238 Mont. 170, 174, 777 P.2d 308, 311.

On appeal, Brogan attacks twenty-six of the District Court's fifty-two individual findings of fact. In most instances Brogan points to a conflict in the testimony between the parties and other witnesses. The District Court's findings regarding these matters are sufficiently supported by the evidence and we will not substitute our judgment for that of the District Court because conflicting evidence supports contrary findings.

Brogan also directs us to the laboratory reports regarding the elk tested for export to Canada and asserts the District Court erred in its calculations of the number of cow elk which passed their final tests for export before the cut-off dates of the

contracts. Brogan's argument with respect to the exact number of cow elk which passed all the required tests for export to Canada before the cut-off dates of the contracts is credible but not grounds for reversal. Because we have determined there was a valid extension of the cut-off dates of the contracts we need only determine whether substantial evidence supports the District Court's findings that Brogan could have performed the contracts within a reasonable time after the cut-off dates and that his failure to do so caused Trad consequent loss and damages.

The record shows that on April 28, 1987, Brogan concluded testing on a group of elk, including at least sixteen cow elk, which were sold to Carden Farms of Canada in early May. In addition, on June 5, 1987, Brogan concluded testing on another group, including 74 cow elk, which were sold to Doug Bauman of Alberta, Canada. These elk could have been used to fulfill the Brogan-Trad contracts.

The record also shows Trad entered a number of contracts with third-parties to resell the elk contracted for with Brogan. Brogan argues that he is not responsible for Trad's lost profits because Trad entered into these contracts before entering into the Brogan-Trad contracts. We disagree. Brogan was aware of Trad's negotiations with third-parties. Although Trad may have been negotiating the third-party contracts prior to the Brogan-Trad contracts, the record shows that they were finalized after Brogan and Trad entered into their contracts.

We hold that substantial credible evidence supports the District Court's findings of fact.

12

The fourth issue on appeal is whether the District Court erred by awarding Trad damages for all 82 elk contracted for. Brogan contends that even if this Court were to uphold the judgement of the District Court, he should be required to pay damages based upon 55 head of elk cows instead of 82. Brogan argues that it would be inequitable to require him to pay the full amount of damages for 82 undelivered elk when he had in fact sold to Trad 27 head of elk on December 19, 1986, five days after entering into the first contract and at the price per elk stated in that contract.

The District Court found that the 27 elk were not the subject of either of the other two contracts between the parties. The District Court's finding is supported by the testimony of both parties. Brogan acknowledged this in his December 21, 1986 contract with Carden Farms in which Carden Farms was given a right of first refusal on all future elk for one year with the exception of the 50 elk committed to Trad under their first contract and elk Brogan would keep for his home herd. We hold the District court did not err in awarding damages based upon all 82 elk contracted for.

On cross-appeal Trad contends the District Court erred when it concluded that Trad was not entitled to an award of exemplary damages. This conclusion was based on the court's finding of fact number 50 which states:

> While the court finds defendant breached his contracts with plaintiff, Brogan did sell Trad 27 other animals he was not obliged to, and offered to deliver the ten calves contracted for, and that the evidence does not establish defendant's conduct was so gross or aggravated as to award additional damages for the tort of breach of the covenant of good faith between the parties, nor any

13

punitive damages, the latter of which are not proper anyway on contract cases (section 27-1-220, MCA).

Trad points out that its complaint, filed April 6, 1987, created a cause of action which arose prior to the effective date of § 27-1-220(2)(a), (1989) MCA, which largely eliminates punitive damages in contract or breach of contract actions. Trad argues that the court's findings indicate Brogan's conduct amounts to oppression, fraud or presumed malice and at least can be characterized as arbitrary, capricious or unreasonable as to entitle it to an award of damages for the tort of breach of the implied covenant of good faith and fair dealing.

This Court has recently reassessed the covenant of good faith and fair dealing in an effort to provide more workable guidelines. In Story v. City of Bozeman (1990), 242 Mont. 436, 451, 791 P.2d 767, 776, we held that in common contract actions tort-type damages are not available for breach of the implied covenant of good faith and fair dealing. The tort of bad faith has applicability only in exceptional circumstances in contracts involving "special relationships which are not otherwise controlled by specific statutory provisions." Story, 242 Mont. at 451, 791 P.2d at 776. The contract in the present case is a common commercial contract for the sale of goods and is governed by the Uniform Commercial Code's commercial reasonableness standard. Consequently, even if it was found that Brogan breached the implied covenant, Trad would be entitled to recover only contract damages and not tort damages.

Tort-type damages may be available for traditional contract-related torts. Story, 242 Mont. at 451, 791 P.2d at 776. However,

14

after reviewing the record, we agree with the District Court that Brogan's conduct does not rise to a level of oppression, fraud or presumed malice. As the District Court found, Brogan did sell to Trad twenty-seven elk he was not obligated to and offered to deliver the ten calves contracted for.

We hold that the District Court did not err when it denied Trad exemplary damages.

Affirmed.

_____
Justice

We concur:

_____
_____
_____
_____
Justices