No. 92-138

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

VERNON SAGE and ALMA SAGE,

      Plaintiffs and Respondents,

  v.

MICHAEL T. ROGERS and
AMERICAN PANEL COMPANY,

      Defendants and Appellants.

APPEAL FROM:   District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

          Terry G. Sehestedt, Attorney at Law,
          Missoula, Montana

      For Respondents:

          Darla J. Keck, Datsopoulos, MacDonald & Lind,
          Missoula, Montana

FILED

MAR - 9 1993

Filed:

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: November 5, 1992

Decided: March 9, 1993

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from an order of the Fourth Judicial District Court, Missoula County, granting plaintiffs possession of commercial rental property plus costs for damages and denying defendant's motion for a new trial. We affirm the court's judgment with the exception of $95.85 as herein noted.

The issues on appeal are:

1. Did the District Court abuse its discretion in denying Rogers' motion for a new trial?

2. Did the District Court err in ruling that notice given to terminate a tenancy when insufficient for one period of tenancy is sufficient to terminate for a subsequent rental period?

3. Did the District Court err in ruling that the landlords were entitled to holdover penalties for the portion of December during which the tenant remained in possession, plus treble rent?

4. Did the District Court abuse its discretion in awarding damages to the landlords for the loss of their locking device?

5. Did the District Court err in awarding damages to the landlords for the damage sustained on the landlords' rental property?

6. Did the District Court abuse its discretion in refusing to award damages to tenant on the ground that amounts claimed were speculative?

7. Did the District Court abuse its discretion in refusing to award nominal damages to tenant?

8. Did the District Court abuse its discretion in refusing to

2

award tenant attorney's fees incurred with respect to the November 28, 1989 hearing?

9. Did the District Court abuse its discretion in awarding landlords costs for a discovery deposition and for a partial transcript of proceedings?

This case involves the rental of commercial property located at 5000 Highway 93 South, Missoula, Montana. The property owned by Vernon and Alma Sage (Sages or landlords), was advertised for rent in the Messenger at a $575 per month rental fee. On April 19, 1989, the ad was answered by Michael T. Rogers (Rogers or tenant) who owns American Panel Company, Inc. Rogers was seeking a location for his company which manufactures heat resistant panels for wood stoves.

The Sages subsequently rented the space to Rogers on an oral lease, with the rent payable on the first of every month. Both the Sages and Rogers testified that the utility bill was to be put into Rogers' name and that he was required by the Sages to keep the premises clean. The Sages testified that Rogers failed to pay the rent on time, did not have the utility bill put into his name and left garbage all over the property. According to the Sages, Rogers also damaged parts of the warehouse itself.

As a result, the Sages sent a Notice of Rental Agreement Termination to Rogers on July 24, 1989. This notice terminated the month-to-month tenancy with the defendant and required that he leave on or before August 24, 1989. The Sages extended his termination date to October 1, 1989, if certain conditions were

3

met: he must agree to pay the next rent check on time and to pay $250 deposit for the utility bill and $500 for cleaning. Rogers paid the $250 for the utilities, did not pay the $500 and did not pay his rent on time. At the end of September the Sages went on a fishing trip, expecting Rogers to be gone from the premises when they returned. However, when they returned on October 1, 1989, they found Rogers still there. Rogers placed a rent check on the Sages' desk and Mr. Sage cashed the check even though the Sages still wished Rogers to leave the premises.

After Mr. Sage cashed the check he provided another notice to Rogers to vacate. The notice was given to Rogers on October 3, 1989 for him to vacate by November 1, 1989. When the notice was delivered, Rogers stated that he would not leave the premises. On November 2, 1989, when Rogers was still at the warehouse, the Sages placed a padlock on the front door, along with a note addressed to Rogers requesting that he come to the Sages' office. Rogers was out of town but an employee came to the Sages' office to request entrance to the factory-warehouse. The Sages immediately removed the lock from the door.

On November 3, 1989, Rogers attempted to pay rent for the month of November by laying the check on the Sages' office desk. Mrs. Sage ran after him and threw the check into Rogers' car window as he drove away. She told him that she did not want the check. She then placed a padlock on the door. Minutes later Rogers returned and, seeing the lock on the door, headed for his forklift. The Sages' son, Russell, seeing that Rogers intended to force entry

4

into the building, shot several "warning" shots into the air and then called the police to report having done this. Rogers continued toward the overhead door with his forklift and forced it open, damaging the door.

The Sages filed an action for possession and damages in the Fourth Judicial District Court, Missoula County, on November 6, 1989. The District Court ruled on this motion on November 28, 1989 stating that although the October 3 notice was not sufficient to evict Rogers by November 1, 1989, a prima facie case existed for Rogers to vacate the premises by December 1. It, therefore, denied the Sages' motion for immediate possession of the property. The court informed the Sages that they could not file their claim for ejectment again until December 1, 1989, because the court could not eject the tenant prior to that date.

The Sages filed an Amended Complaint for possession and damages on December 1, 1989. Since Rogers had still not left the premises, the Sages moved the court to issue an order to show cause why Rogers should not be ordered to immediately return possession of the property to the Sages. The motion requested a hearing on December 11, 1989. The motion was never ruled on because Rogers vacated the premises voluntarily on December 6, 1989.

A trial was held on September 11, 1991. The District Court issued its findings of fact and conclusions of law on September 24, 1991. Rogers filed an objection to the Sages' statement of costs and in October, 1991 moved in the alternative for a new trial or for amended findings and judgment. The court denied the motion.

5

From that denial and the trial court's decision, Rogers now appeals.

I.

Did the District Court abuse its discretion in denying Rogers' motion for a new trial?

Rogers argues that he is entitled to a new trial because of irregularity in the proceedings. According to Rogers, the court ruled on who was entitled to possession of the property during the November 28, 1989 hearing, before Rogers had an opportunity to present his case. According to Rogers, the trial judge went into court thinking he had already ruled on who was entitled to permanent possession. The Sages argue that no irregularities occurred either at the hearing in November of 1989 or the court trial of September 11, 1991.

A new trial will be granted when there is an:

irregularity in the proceedings of the court, jury, or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial;. . .

Section 25-11-102(1), MCA. The District Court denied Rogers' motion for a new trial. We will not reverse a district court's grant or denial of a new trial absent a manifest abuse of discretion. Tappan v. Higgins (1989), 240 Mont. 158, 783 P.2d 396.

Rogers' petition for a new trial centers on the court's decision of November 28, that the Sages could file their ejectment action again on December 1, 1989. In its ruling, the court determined that the October 3, 1989 notice was insufficient to terminate the tenancy as of November 1, 1989, but, as a matter of

6

law, was sufficient to terminate a monthly tenancy on December 1, 1989. Therefore, the court instructed the Sages that they must file their ejectment action again on December 1, 1989 because the court could not consider any action during the period that Rogers had to vacate.

The court's direction was a legal one and determined only the sufficiency of the notice to terminate the tenancy on November 1, 1989. The court did not decide on November 28, 1989, who had eventual right to possession or what the actual term of the original agreement was. We conclude that Rogers mischaracterizes the court's statements and actions during the November 28, 1989 hearing. By issuing the hearing order, the court did not create irregularities in the proceedings at trial nor did it fail to permit Rogers a chance to present his case. Reversal of the November 28 decision is not warranted.

We hold that the District Court did not abuse its discretion in denying Rogers' motion for a new trial.

II.

Did the District Court err in ruling that notice insufficient to terminate one periodic tenancy is sufficient to terminate a subsequent periodic tenancy?

Rogers claims that a notice to terminate a tenancy which is insufficient for one periodic tenancy is insufficient forever. The Sages argue that a notice insufficient for one thirty day period works to terminate the tenancy at the next possible date.

The resolution of this issue is a legal determination. We

7

review matters of law as to whether they are correct. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 803 P.2d 601. The question of whether a notice insufficient to terminate one periodic tenancy is fatal for all subsequent periods or whether it is sufficient to terminate a subsequent periodic tenancy is a case of first impression in Montana.

Rogers contends that Montana decided this question forty years ago in Welsh v. Roehm (1952), 125 Mont. 517, 241 P.2d 816. According to Rogers, Welsh stands for the proposition that if a notice is insufficient for one thirty-day period, it is insufficient forever; thus, such insufficiency makes the notice at issue fatal. However, Welsh is not dispositive of the case at bar.

First, Welsh is a residential case. The action before us involves commercial property. Second, in Welsh, the owner was told by the federal government that he could not evict the tenants because of federally controlled rent procedures. Here, there is no question of federal rent control. Third, the Welsh Court did not concern itself with any further insufficiency beyond the first insufficient notice:

> The notice was insufficient under Montana law to form a basis of a court action to remove the Welshs [sic] from the premises, since such notice, the rent having been paid in advance, must be of thirty days duration.

Welsh, 125 Mont. at 519. The Welsh Court never considered any further notice because no further notice was given. Instead of a second notice, Welsh's landlord simply moved into the Welsh's living room with his family and stayed for seventeen days. Both Welsh's facts and its holding make it inapplicable to the case

8

before us.

While no other Montana case deals specifically with this issue, both case law from other jurisdictions and learned treatises provide that the original insufficiency does not make the notice fatal:

> It has been held that while a notice given shortly after the beginning of one monthly period is inadequate to terminate the tenancy at the end of that period or at the expiration of the time stated in the notice, it is nevertheless adequate to terminate the tenancy at the end of the next monthly period.

50 Am.Jur.2d, Landlord and Tenant, § 1211 (1970). Further, the Restatement 2d of Property states:

> On March 1, Landlord and Tenant enter into a month to month tenancy to begin on that date. No provision for notice is made. In order to terminate Tenant's tenancy on November 30, Landlord must give Tenant notice no later than 11:59 p.m. on October 31. A notice given on November 1 will not run for one full period before the monthly tenancy renews itself immediately at 11:59 p.m. on November 30. However, the November 1 notice is effective to terminate the lease on December 31 even though it specified November 30 as the date of termination.

Restatement 2d of Property, Landlord Tenant Relationship, § 1.5, comment f (1977).

The District Court, here, relied not on the treatises but on Dickens v. Hall (N.M. 1986), 718 P.2d 683, for its determination that the October 3 notice in the instant case, although insufficient for termination of tenancy by November 1, was nevertheless effective on December 1. The facts of Dickens are very similar to the facts here.

The commercial lease in question in Dickens was an oral month-to-month lease. Dickens notified Hall by letter dated March 8,

9

1984, that he was to vacate the premises. Hall never received the letter, so on March 29, 1984, Dickens sent Hall another letter to vacate which was received on April 2, 1984. Hall refused to leave the premises and Dickens filed an action on April 11, 1984. The court ruled that Dickens was entitled to the premises after May 2, 1984 because a notice insufficient for one thirty-day period is sufficient for the subsequent period. Dickens, 718 P.2d at 685. The court also ruled that Dickens could not file the action during the time that Hall had to vacate.

Nothing in Montana's statutes pertaining to commercial leases controls the situation here. Section 70-26-201, MCA, in substance provides that commercial leases are presumed to be for a one-year term if no other term is expressed in the hiring. With regard to renewal by continued possession, § 70-26-204, MCA, provides:

> **Renewal of lease by lessee's continued possession.** If a lessee of real property leased under an arrangement not governed by chapter 24 [Residential leases] of this title remains in possession thereof after the expiration of the hiring and the lessor accepts a rent from him, the parties are presumed to have renewed the hiring on the same terms and for the same time, not exceeding 1 month when the rent is payable monthly, or in any case 1 year.

With regard to the required notice to terminate a lease, § 70-26-205, MCA, provides in pertinent part:

> **Notice required to terminate lease.** (1) A hiring of real property for a term not specified by the parties is presumed to be renewed as stated in 70-26-204 at the end of the term implied by law unless one of the parties gives notice to the other of his intention to terminate the hiring at least as long before the expiration thereof as the term of the hiring itself, not exceeding 1 month.
> . . .

According to the record, the lease was an oral month-to-month

lease. Because the rent was payable monthly, § 205 required a month's notice to vacate or terminate. While these statutes do determine that a one-month notice was required, they do not address the specific question before us: whether a notice given on October 3 requiring the tenant to vacate by November 1 was sufficient to require vacation on December 1.

In a similar manner, § 70-27-104, MCA, with regard to termination of a tenancy at will requires written notice to remove within a period of not less than one month to be specified in the notice, but does not address the specific issue here.

We conclude that the above quotation from Am.Jur.2d, Landlord and Tenant, and from Restatement 2d of Property correctly sets forth the rule to be applied in Montana. We therefore hold that the October 3, 1989 notice to vacate by November 1, 1989 was insufficient to terminate the tenancy on October 31, 1989, but was effective to terminate the tenancy on November 30, 1989. As a result we affirm the determination of the District Court on this issue.

III.

Did the District Court err in ruling that the landlords were entitled to holdover penalties for the portion of December during which the tenant remained in possession plus treble rent?

Rogers contends that the court could not award quadruple damages. The Sages contend that a person who remains in possession after adequate written notice to vacate is "holding over" and that such tenant can be assessed treble damages plus interest and

11

exemplary damages.

The tenant remained in possession through December 6, 1989 and did not pay rent for such occupancy. The District Court determined that at a monthly rent of $575, the rent for six days was $95.85. Therefore, the court awarded the Sages the amount of $95.85 x 3 as treble rent and $95.85 as rent for the six day period which the tenant heldover. Whether this assessment was appropriate is a question of law which we review as to whether the District Court was correct. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 803 P.2d 601.

Here, Rogers' argument concerning the quadruple rent is well-taken. The treble rent is expressly provided for in § 70-27-207, MCA. However, the $95.85 which the Sages claim are exemplary damages pursuant to § 70-27-209, MCA, are not appropriate. Exemplary damages are only awarded as punitive in nature:

> **Punitive damages - when allowed.** (1) Except as otherwise expressly provided by statute, a judge or jury may award, in addition to compensatory damages, punitive damages for the sake of example and for the purpose of punishing a defendant.
>
> (2) (a) Unless otherwise expressly provided by statute, punitive damages may not be recovered in any action arising from:
> (i) contract; or
> (ii) breach of contract. . . .

Section 27-1-220, MCA. This case is a contract case and the applicable statutes do not expressly provide for punitive damages in a contract situation dealing with a commercial lease. We, therefore, conclude that the District Court was only permitted to award treble rent as damages and not the separate amount of $95.85.

12

Therefore, we hold that the District Court erred in ruling that the landlords were entitled to holdover penalties for the portion of December during which the tenant remained in possession plus treble rent. We reverse the District Court assessment of the $95.85 rent for the six hold over days, but affirm the assessment of treble rent at $95.85 x 3.

## IV.

Did the District Court abuse its discretion in awarding damages to the landlord for the loss of their locking device?

Rogers argues that the Sages were not entitled to take the law into their own hands by locking Rogers out of his business. According to Rogers, the Sages should not then benefit from their illegal behavior by demanding recompense for the lock used in the illegal lock out. The Sages contend that they asked for the lock on several occasions, that just because the landlords were not entitled to lock the warehouse, does not mean that Rogers has the right to convert the property to his own use.

The record reveals that the Sages were in error in locking the warehouse door, even if for only a short time. The record further indicates that the lock was not returned to the Sages. Two wrongs do not make a right. Rogers' failure to return the landlords' property makes him responsible for its disappearance.

The awarding of damages rests with the sound discretion of the trier of fact. Vinion v. Wood Yard, Inc. (1988), 232 Mont. 110, 755 P.2d 31. We hold that the District Court did not abuse its discretion in awarding damages to the landlords for the loss of

13

their locking device.

V.

Did the District Court err in awarding damages to the landlords for the damage sustained on the landlords' rental property?

The District Court awarded judgment against the defendants for repairs and cleaning in the amount of $3,003.74, which was composed of the following:

a.    Repair of rear door
      Repairs completed by Overhead Door Company of Missoula . . .
                                                          $60.00

b.    Pressure wash floor - removal of cement/masonry
      Cleaning done by Hydro-Chem Industrial Cleaning, .
      . . . Missoula, Montana . . .
                                                          $2070.00

c.    Sump, clean and unplug floor drain
      Repairs and Cleaning done by Rod's General Services, . . . Florence, Montana . . .
                                                          $277.50

d.    Replace toilet facility
      Completed by Little Lodges, . . . Missoula . . .
                                                          $386.24

e.    Painting of walls
      Completed by Rod's General Services, Florence, Montana . . .
                                                          $100.00

f.    Replacement of exterior metal panels
                                                          $110.00

Mr. Sage testified that they received bids from different parties for each of the items listed above and accepted the low bid in each instance. Mr. Sage identified the repair estimates and the bills submitted and testified that the Sages had paid each of the bills making up the above items. Rogers objected to the admission of the bills in evidence on the grounds that the bills were

14

hearsay.

When reviewing the findings of a district court sitting without a jury, we determine whether the findings are clearly erroneous. Trad Industries, Ltd. v. Brogan (1991), 246 Mont. 439, 805 P.2d 54. Clearly erroneous is defined as whether the court's decision is supported by substantial evidence. Id.

A representative of Hydro-Chem testified at length and his testimony was sufficient to establish the $2,070 charged by his company. Mr. and Mrs. Sage also testified as to the other items, explaining in detail the nature of the services performed, the estimates obtained from other persons, and described the nature of the services rendered and the payment of each of the items by the Sages. The record contains no evidence submitted by Rogers in opposition to the evidence by the Sages. We conclude that the District Court was not clearly erroneous in awarding the damages in the amount of $3,003.74 and that there is substantial evidence to support each award without consideration of the written statements or bills themselves. We further conclude that appellant's argument concerning hearsay is without merit.

We hold the District Court did not err in awarding damages to the landlords for the damages sustained on the landlords' rental property.

VI.

Did the District Court abuse its discretion in refusing to award damages to tenant on the ground that amounts claimed were speculative?

15

Rogers contends that he was damaged by the time that his company was locked out by the Sages and by the adverse working conditions the Sages created by shooting a gun in the air. The Sages contend that Rogers has proven no damage. In addition, the Sages argue that the only piece of evidence submitted by Rogers was a summary of his work records for 1989 and 1990. The record reflects that Rogers provided no concrete evidence that his business was down 206 panels as he testified.

In order to recover for lost profits, Rogers has to establish them with some certainty as well as prove the source of the lost profits. Stensvad v. Miners and Merchants Bank of Roundup (1982), 196 Mont. 193, 640 P.2d 1303. A review of the record failed to establish that Rogers presented evidence to establish his lost profits.

We hold that the District Court did not abuse its discretion in refusing to award damages to tenant on the ground that amounts claimed were speculative.

## VII.

Did the District Court abuse its discretion in refusing to award nominal damages to tenant?

Rogers asserts that a forcible entry or detainer occurred by the landlords when they excluded him from the premises. The Sages contend that the District Court could have awarded nominal damages to Rogers but was under no directive to do so.

> **Nominal damages when no appreciable detriment.** When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages.

16

Section 27-1-204, MCA. The District Court may set nominal damages. The record indicates that the District Court found that the Sages acted in a good faith belief that they were permitted to lock the tenant out.

We hold that the District Court did not abuse its discretion in refusing to award nominal damages to tenant.

## VIII.

Did the District Court abuse its discretion in refusing to award tenant attorney's fees incurred with respect to the November 28, 1989 hearing?

Rogers argues that although there is no statute or contract that provides for attorney's fees in this case, the court should have awarded them to tenant because the Sages were not entitled to evict them on November 28, 1989. The Sages argue that there is no basis in equity or law for an award of attorney's fees to the tenant.

The general rule is that absent a statute or contract, attorney's fees will not be awarded. Joseph Russell Realty Co. v. Kenneally (1980), 185 Mont. 496, 605 P.2d 1107. Here, the court did not award attorney's fees. Absent an abuse of the lower court's discretion, this Court will not reverse the lower court's decision concerning attorney's fees. Russell, 185 Mont. at 505, 605 P.2d at 1112.

We hold that the District Court did not abuse its discretion in refusing to award tenant attorney's fees incurred with respect to the November 28, 1989 hearing.

17

Did the District Court abuse its discretion in awarding landlords costs for a discovery deposition and for a partial transcript of proceedings?

Rogers contends that the District Court improperly awarded the Sages $126.75 for a deposition which was not used at trial and $16.25 for a partial transcript of the November 28, 1989 hearing which was transcribed for the Sages' convenience. The Sages argue that these charges were proper under § 25-10-501, MCA.

Section 25-10-501, MCA, provides the procedure for which the party in whose favor judgment is rendered claims his costs. The Sages claimed both the aforementioned as cost of the litigation. The Sages here indicate that the deposition of Rogers was used at the time of the September 11, 1991 trial to impeach him and thus the use of the deposition was taxable and, therefore, an allowable cost. Deposition costs are allowable where the deposition is used at trial. Cash v. Otis Elevator, Co. (1984), 210 Mont. 319, 684 P.2d 1041. The record sustains the Sages' argument that the deposition was so used.

The record indicates that before the September 11, 1991 trial, and before the court issued its findings and conclusions, the partial transcript of the November 28, 1989 hearing was used to refresh the judge's memory about his prior ruling. Because this partial transcript was so used, its cost is legitimate.

We hold the District Court did not abuse its discretion in awarding the landlords their costs for a discovery deposition and

18

for a partial transcript of proceedings.

We affirm the court's judgment with the exception that it should be reduced by the amount of $95.85.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice Terry N. Trieweiler concurring in part and dissenting in part.

I concur with the majority's conclusions, except for those expressed under Issue V. It is clear that there was an inadequate evidentiary basis for the damages awarded in paragraphs (a), (c), (d), and (f) of the District Court's Finding No. 14. Therefore, I would amend the judgment by striking the recovery of damages in the amount that those items represent.

Section 27-1-302, MCA, requires that "[d]amages must in all cases be reasonable, and . . . no more than reasonable damages can be recovered."

In this case, the plaintiffs' evidence in regard to the above damages consisted of offering several repair estimates and bills and then testifying that the bills had been paid. At no time was there any evidence that these expenditures were reasonable for the type of damage that had been sustained.

Furthermore, the bills on which the District Court based its damage award should never have been admitted. They were clearly out-of-court statements as defined in Rule 801, M.R.Evid., which were offered to prove the truth of the matters asserted therein. The bills were offered to prove that the work was done and that the amount for which the bills were submitted was a reasonable amount. Therefore, pursuant to Rule 802, M.R.Evid., the bills were not admissible and since defendants properly objected to their admission on the basis that they constituted hearsay, they should have been excluded. Without the inadmissible bills, there was no evidentiary basis for determining the reasonable amount of

20

plaintiffs' damages. The mere fact that plaintiffs paid the amounts stated did not make their expenditure reasonable.

Plaintiffs had the burden of proving by a preponderance of the evidence the reasonable value of their damages. The majority casually shifts the burden to defendants by suggesting that since defendants did not disprove the amount of damages claimed by plaintiffs, then plaintiffs' proof was sufficient.

This new rule of trial practice should indeed surprise most of the practicing bar in the State of Montana.

The majority opinion ignores simple rules of evidence, elementary principles of trial practice, and fundamental rules regarding a litigant's burden of proof.

For these reasons, I dissent from Part V of the majority opinion.

_____
Justice

Justice Karla M. Gray concurs in the foregoing concurrence and dissent.

_____
Justice

Justice R. C. McDonough, concurring in part and dissenting in part.

I concur with the majority except as to Issue V to which I dissent. The bills as offered were not admissible and therefore plaintiffs did not prove the damages allegedly represented by the bills.

_____
Justice

21

March 9, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Terry G. Sehestedt
Attorney at Law
P. O. Box 8281
Missoula, MT  59807

Darla J. Keck
Datsopoulos, MacDonald & Lind
201 W. Main, Central Square Building
Missoula, MT  59802

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy