No. 89-342

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

SHERRI LENORE TAPPAN,

        Plaintiff and Respondent,

  -vs-

JEFFERY C. HIGGINS,

        Defendant and Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Stephen C. Berg; Warden, Christiansen, Johnson & Berg,
        Kalispell, Montana

    For Respondent:

        David W. Lauridsen; Bothe & Lauridsen, Columbia Falls,
        Montana

Submitted on Briefs: Aug. 31, 1989

Decided: December 1, 1989

Filed:

'89 DEC 1 PM 3 24

ED SMITH, CLERK
MONTANA SUPREME COURT

_____
    /Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

Defendant, Jeffery C. Higgins, appeals an order of the Flathead County District Court granting a new trial to the plaintiff, Sherri Lenore Tappan. In a personal injury action, the jury found in favor of the plaintiff in the amount of $3,450.00. Plaintiff moved for a new trial on the ground of inadequacy of damages and the trial court granted the motion. Defendant now appeals the District Court order. We affirm.

The sole issue on appeal is: Whether the District Court abused its discretion in granting Tappan's motion for a new trial.

On July 29, 1986, Tappan and Higgins were involved in an automobile accident on Highway 93 near Whitefish, Montana. Tappan's vehicle was struck from behind by Higgins' vehicle while Tappan attempted to make a left hand turn. Tappan's vehicle sustained approximately $5,000.00 in damages and was totaled. In addition, Tappan sustained neck injuries.

Tappan sued Higgins in District Court for damages consisting of medical expenses, lost past and future income, and general damages. In the pretrial order, defendant Higgins admitted negligence. The case went to trial on the issues of proximate cause and plaintiff's damages.

In closing argument, Tappan's counsel asked the jury to award $15,118.53 in past wage loss, $400.00 in miscellaneous expenses, $51,870.00 in future wage loss, $4,385.59 in past medical expenses, and $15,000.00 each for pain and suffering and loss of enjoyment of life, for an approximate total of $100,000.00. Higgin's counsel advised the jury to award $6,300.00 of past wage loss, nothing for future wage loss,

$400.00 for miscellaneous expenses, and an unspecified amount for pain and suffering and loss of enjoyment of life.

The jury returned the verdict for Tappan in the amount of $3,450.00, allocating $2,400.00 to past wage loss, $200.00 for miscellaneous expenses, and $850.00 for past medical expenses.

Tappan moved the court for a new trial pursuant to § 25-11-102(6), MCA, for insufficiency of the evidence to justify the verdict. The District Court granted Tappan's motion.

Higgins argues on appeal that the District Court abused its discretion in ordering a new trial because there was substantial credible evidence in the record supporting the jury's verdict. Tappan contends that the jury overlooked the overwhelming evidence of her damages, and the judge properly granted her a new trial.

In granting Tappan's motion for a new trial, the District Court found the verdict was not supported by the evidence pursuant to Rule 59(a), M.R.Civ.P., and § 25-11-102(6), MCA.

The decision to grant or deny a new trial is within the sound discretion of the trial court, Fredericksen v. Fredericksen (1980), 185 Mont. 548, 605 P.2d 1135, 1137, and will not be overturned absent a showing of manifest abuse of that discretion. Giles v. Flint Val. Forest Products (1979), 179 Mont. 382, 387, 588 P.2d 535, 538; Walter v. Evans Products Company (1983), 207 Mont. 26, 31, 672 P.2d 613, 616. This Court recognizes that only in rare cases should a jury verdict be set aside and a new trial granted. Nevertheless, though the amount is solely within the province of the jury, the jury is not given carte blanche. Sanders v. Mount Haggin Livestock Co. (1972), 160 Mont. 73, 89, 500 P.2d 397, 406. Some substantial evidence must exist to support the jury

- 3 -

verdict. Maykuth v. Eaton (1984), 212 Mont. 370, 373, 687 P.2d 776, 727.

In Maykuth, the District Court held insufficient as a matter of law a $700.00 award for pain and suffering. We reversed the holding:

> To permit the undoing of this verdict by affirming the trial court decision granting a new trial, would in the language of Nelson v. Hartman (Mont. 1982), 648 P.2d 1176, 1179 ". . . create a bench supremacy and sap the vitality of jury verdicts." While the trial court, or this Court sitting as a jury, or another jury, may have awarded plaintiff more for pain and suffering in the year following the accident, we cannot say as a matter of law that substantial evidence did not support the jury's award.

Maykuth, 687 P.2d at 727; Walls v. Rue (Mont. 1988), 759 P.2d 169, 171.

In contrast, this Court has held that a jury's failure to award damages for pain and suffering constituted an inadequate award where "the evidence clearly indicates that plaintiff suffered serious and painful injury." Gehnert v. Cullinan (Mont. 1984), 211 Mont. 435, 439, 685 P.2d 352, 354.

Tappan contends that in this case, as in Gehnert, the jury failed to award the proper amount of damages when the evidence has clearly showed injury due to defendant's conduct. Higgins responds that the jury's failure to award greater damages resulted from his attacks on the credibility of Tappan and the certainty of her evidence. Higgins argues that there is substantial credible evidence to support the jury verdict. To resolve this issue, a review of the medical evidence and Tappan's employment history is necessary.

Immediately after the collision, Tappan felt pain in her neck and several minutes later felt numbness in both upper extremities. An ambulance transported Tappan to North Valley Hospital where she was treated by Dr. Ricker. He x-rayed her

- 4 -

cervical spine and found nothing broken. Dr. Ricker told Tappan she would be sore and advised her to obtain a cervical collar and take medication if necessary.

Tappan missed work the next day in that she could not raise her head off her pillow due to intense neck pain. She returned to work the next day in the belief that her symptoms would subside; however, the symptoms persisted and she was then seen by a Dr. Heaps, a Kalispell chiropractor.

Tappan initially saw Dr. Heaps on August 18, 1986. The doctor took Tappan off work from August 21, 1986 until September 22, 1986. Dr. Heaps testified that he took x-rays on August 18, 1986, and on January 8, 1988. The x-rays showed a mild scoliosis and he diagnosed nerve root irritation and a sprain of the cervical and lumbosacral area. Dr. Heaps treated her with spinal manipulation. The doctor's charges for treatment to Tappan were $1,309.50.

Dr. Stevens first saw Tappan on March 10, 1987, and obtained a history identifying her problems dating back to the automobile accident on July 29, 1986. Dr. Stevens testified by deposition and opinion that the plaintiffs' suffered from post-traumatic muscle contraction headaches and myofacial pain syndrome. Myofacial pain syndrome is a reoccurrence of muscle pain triggered by spasms. Dr. Heaps agreed with Dr. Stevens' diagnosis of myofacial pain syndrome.

Tappan's injuries resulted in her inability to perform her job as bakery manager at Excel Foods. When the plaintiff attempted to perform her regular duties in the bakery, her pain increased and she went through a series of authorizations of absence from work at the direction of Dr. Heaps. After attempting to perform her full bakery manager duties properly for over one year, she terminated her employment with Excel Foods. After a series of unsuccessful

jobs, plaintiff now works at Keenan's Jewelry in Kalispell, Montana, earning $4.00 per hour.

The evidence presented at trial overwhelmingly shows that the plaintiff could no longer work at the bakery. Dr. Stevens was presented with two job descriptions detailing the plaintiff's duties as a bakery manager and cake decorator, both of which he disapproved due to the lifting, bending and twisting requirements of those occupations.

Bob Markus, manager of Excel Foods, concurred with Dr. Stevens that Tappan could no longer perform her job at the bakery. Mr. Markus stated that the plaintiff's work was satisfactory and she was able to perform her duties prior to the accident. Following the accident, however, Mr. Markus noted that the plaintiff did not look well and that she was occasionally tearful. Markus testified that Tappan was not able to physically perform her job following the automobile accident. Markus speculated that had Tappan been able to continue her job as bakery manager, she would be earning $10.50 per hour plus benefits as of the time of trial.

Both parties hired experts to determine Tappan's wage loss. Dennis O'Donnell, an economics professor at the University of Montana, calculated Tappan's past wage loss, including benefits, at $17,922.32, based upon a loss of $8,645.00 per year. Over a ten year period, Professor O'Donnell, estimates Tappan economic loss is $100,598.00. The defense expert, Barbara Muellen, vocational rehabilitation consultant, opined that Tappan lost $1,654.75 in 1986 and $9,562.00 in 1987, for a total wage loss of $11,217.51. Thus the defendant's own expert's opinion of Tappan's wage loss is approximately $8,800.00 more than the jury awarded Tappan in their verdict. Clearly the evidence at trial does not support a wage loss damage of only $2,400.00.

The jury awarded Tappan nothing for loss of future earnings or earning capacity. This portion of the verdict is also not supported by the evidence. Dr. Stevens testified that Tappan's injury permanently excluded her from working as a cake decorator and bakery manager. Brian Holtslag, a vocational specialist, concluded at trial that Tappan could not continue in the bakery field due to the physical limitations imposed by Dr. Stevens. Her employer, Bob Markus testified that Tappan could now be earning $10.50 per hour or in excess of $1,700.00 per month. Tappan's current employment at Keenan's Jewelry pays Tappan $4.00 per hour. Though the evidence clearly supported future wage loss damages, the jury chose to grant the plaintiff nothing for the loss of earning capacity.

The jury awarded Tappan $850.00 in medical expenses. This reduced amount is unsubstantiated by the evidence. That evidence reveals that Tappan incurred $4,385.59 in medical expenses as a direct result of treatment related to injuries sustained in the accident. The evidence presented at trial justified a verdict for past medical expenses in excess of the $850.00 award.

The jury did not award damages for pain and suffering, nor for Tappan's loss of the capacity to pursue an established course of life. In examining the pain and suffering of Tappan, it is once again clear that the jury disregarded the weight of the evidence presented at trial. Both Drs. Stevens and Heaps determined Tappan suffered from myofacial pain sydrome. Mr. Markus stated that he had observed Tappan in tears due to pain on several occasions following the accident. Dr. Heaps testified that he noted consistent spasms in Tappan's neck, and the pain from these spasms played a role in removing Tappan from work and later

limiting her to part-time work. This pain, severely limited Tappan's lifestyle, and changed her course of life.

While the evidence for pain and suffering is not as abundant as the evidence for loss of wages, there is substantial evidence to support a jury award greater than zero. The evidence presented at trial does support some award for pain and suffering.

The defense presented no medical testimony of its own, but instead attacked the plaintiff's case by attempting to discredit Tappan herself. Higgins maintains that there is substantial credible evidence to support the jury verdict. Higgins contends, now, as he did in the District Court, that the question of Tappan's pain and suffering rests on her credibility. Defendant argues that Tappan's pain was subjective, and that her credibility regarding the amount of bending and lifting required by the bakery job was put into question by testimony of her former employer. While there is conflicting evidence in regard to job requirements at the bakery, the overwhelming evidence in the record supports the plaintiff's position that she can no longer work at the bakery.

Defendant also contends that Tappan saw no health care provider following the accident. According to Higgins, this allowed the jury to conclude that she was either not injured or her injury was slight. Furthermore, Higgins claims that Tappan aggravated her symptoms by returning to work against her doctor's orders. Finally, the defendant argues that Tappan exaggerated her past and future wage loss. The jury, according to Higgins, chose to believe defendant's expert witness on wage loss, and this is reflected in the verdict.

The defendant is correct in his assertion that the jury verdict is determined in large part by the credibility of the party and the witnesses. However, in this case, there are

some glaring discrepancies in the amount of damages presented at trial and the verdict handed down by the jury aside from the credibility of any witness.

The District Court was correct in holding that the verdict was not supported by the evidence; in effect the evidence was insufficient to justify the verdict. Section 25-11-102(6), MCA. The District Court did not abuse its discretion in granting a new trial. We affirm the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

Honorable L. C. Gulbrandson, concurring:

I concur in the result.

_____
Justice

Honorable R. C. McDonough, concurring:

I concur in the result.

_____
Justice

Justice Fred J. Weber did not participate.