No. 99-482

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 279

WILLIAM MAGART,

Plaintiff and Appellant,

v.

GREGG SCHANK,

Defendant and Respondent.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Stephen D. Roberts, Attorney at Law, Bozeman, Montana

For Respondent:

Steve Reida; Landoe, Brown, Planalp, Braaksma & Reida,

Bozeman, Montana

Submitted on Briefs: November 18, 1999
Decided: November 9, 2000

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1 William Magart (Magart) appeals from the judgment entered by the Eighteenth Judicial District Court, Gallatin County, on a jury verdict finding in favor of Magart but failing to award damages on his claim for lost earning capacity. We affirm.

¶2 The issue on appeal is whether substantial credible evidence supports the jury's verdict of zero damages on Magart's claim for lost earning capacity.

## BACKGROUND

¶3 This case arose from an automobile accident which occurred when a vehicle driven by Gregg Schank (Schank) collided with Magart's vehicle at an intersection outside of Belgrade, Montana, on November 2, 1996. Magart and his wife, who was a passenger in his vehicle, filed a complaint against Schank alleging that Schank negligently caused the accident which resulted in injuries to them and requesting a variety of damages. Schank admitted that he negligently caused the accident and the case proceeded to a jury trial on the issues of whether the accident was the proximate cause of the Magarts' injuries and damages. The jury found in favor of the Magarts on the proximate cause issue and awarded them damages for past and future medical expenses, past lost earnings, past and future pain and suffering, and loss of established course of life. The jury awarded Magart zero damages on his claim for lost earning capacity. Magart appeals.

## STANDARD OF REVIEW

¶4 We review a jury's verdict to determine whether there is substantial credible evidence in the record to support it. Barnes v. United Industry, Inc. (1996), 275 Mont. 25, 33, 909 P.2d 700, 705. It is not our function to agree or disagree with the jury's verdict and, consequently, if conflicting evidence exists, we do not retry the case because the jury chose to believe one party over the other. Barnes, 275 Mont. at 33, 909 P.2d at 705. It is only in rare cases that a jury verdict should be set aside. Tappan v. Higgins (1989), 240 Mont. 158, 160, 783 P.2d 396, 397. Moreover, in reviewing the sufficiency of the

evidence to support a jury verdict, we review the evidence in a light most favorable to the prevailing party. Morgan v. Great Falls School Dist. No. 1, 2000 MT 28, ¶ 8, 298 Mont. 194, ¶ 8, 995 P.2d 422, ¶ 8 (citation omitted).

## DISCUSSION

¶5 Does substantial credible evidence support the jury's verdict of zero damages on Magart's claim for lost earning capacity?

¶6 At the time of the accident in November of 1996, Magart was employed as a concrete truck driver with Kenyon Noble Ready Mix Company (Kenyon Noble). His job entailed driving concrete mixer trucks to locations where concrete was to be poured and lifting metal chutes off of--and reattaching them to--the truck to pour the concrete. In the spring of 1998, Magart quit Kenyon Noble and went to work for D'Agostino Concrete doing the same type of work. Later in 1998, he began working for Door Tech installing residential and commercial garage doors; the work included overhead work such as lifting and carrying garage door panels and winding door springs. Magart was still working for Door Tech at the time of trial in May of 1999.

¶7 Magart contended at trial that, as a result of the accident, he sustained injuries to his neck, upper back and right shoulder. He further contended that his shoulder injury impaired his ability to work in both his previous employment driving a cement truck and his current employment installing commercial and residential garage doors because the injury makes it difficult to do the overhead lifting which is required in these jobs. Accordingly, he requested an award of damages for future loss of earning capacity. The jury found that Magart had been injured as a result of the accident and awarded him damages for his other claims, but awarded zero damages for his lost earning capacity claim. Magart asserts generally that this portion of the jury's verdict is not supported by substantial evidence. Specifically, he argues the jury was required to find that he suffered a loss of earning capacity because the uncontroverted testimony at trial established that he suffered continuing shoulder problems due to his job duties and that he would be unable to continue his employment as either a cement truck driver or garage door installer as a result of his injury.

¶8 Following the accident, Magart sought treatment from Dr. Ronald Hecht (Hecht), a chiropractor, and Dr. James Weiss (Weiss), a medical doctor, for pain in his neck and upper back. Weiss referred Magart to Steve Anderson (Anderson), a physical therapist,

who assessed Magart as having a shoulder impingement problem in addition to soft tissue strain in his neck and back. Thereafter, Magart's physical therapy sessions with Anderson focused on treating his shoulder problem. Magart subsequently was referred to Dr. John Campbell (Campbell), an orthopedic surgeon, who operated on Magart's shoulder. Gary Lusin (Lusin), a physical therapist, later performed a functional capacities evaluation (FCE) to determine Magart's abilities and limitations relative to his shoulder injury.

¶9 At trial, Magart presented expert testimony from Anderson, Campbell and Lusin regarding his shoulder injury. Magart contends these expert witnesses testified unanimously that the condition of his shoulder would gradually deteriorate if he continued in employment which entails overhead lifting, such as driving a cement truck or installing garage doors, and that he must abandon all manual work which requires overhead lifting. He further contends that the expert testimony was uncontradicted and, as a result, could not be disregarded by the jury. Thus, according to Magart, the jury was required to find, based on the expert testimony, that he suffered a loss of earning capacity because he cannot continue working in his current or past employment. He cites Tappan in support of his argument that a jury verdict awarding no damages for loss of future earning capacity must be set aside where there is uncontradicted medical testimony that a plaintiff cannot continue working in his or her occupation.

¶10 A jury may not disregard uncontradicted, credible nonopinion evidence. Thompson v. City of Bozeman (1997), 284 Mont. 440, 443, 945 P.2d 48, 50 (citations omitted). This general rule, however, applies only to nonopinion lay witness testimony. Expert testimony is opinion evidence which a jury is entitled to disregard if it finds the testimony unpersuasive. See Barnes, 275 Mont. at 33-34, 909 P.2d at 705; Holenstein v. Andrews (1975), 166 Mont. 60, 65, 530 P.2d 476, 479; Putman v. Pollei (1969), 153 Mont. 406, 411, 457 P.2d 776, 779. The District Court instructed the jury that it was not bound by the expert testimony and should give the testimony the weight, if any, to which the jury deemed it entitled. Consequently, and contrary to Magart's contention, the jury was entitled to disregard the testimony of Magart's expert witnesses regardless of whether the testimony was directly controverted by Schank. See Holenstein, 166 Mont. at 65, 530 P.2d at 479.

¶11 Moreover, the expert testimony was not as conclusive as Magart contends. For example, he asserts Campbell testified that Magart's shoulder would definitely deteriorate if he continued performing the overhead lifting required by his past and current employment and that Magart must discontinue such employment. Campbell actually

testified, however, that the overhead lifting involved in the cement and door installation jobs only "increases the risk" that Magart's shoulder condition would deteriorate over time and that it might be "advisable" for Magart to change jobs. Additionally, while Lusin testified that Magart's past and current jobs were not appropriate, his written FCE report states that Magart's job as a garage door installer was acceptable. As a result, this case is distinguishable from Tappan where the expert testimony unequivocally established that the plaintiff was permanently excluded from working in her previous employment as a baker. See Tappan, 240 Mont. at 162, 783 P.2d at 398.

¶12 Furthermore, the District Court instructed the jury that it was "permitted to award compensation only for future loss or harm which is reasonably certain to occur." Reviewing the expert testimony in the light most favorable to Schank, as we must, we conclude the jury could reasonably have determined that future deterioration of Magart's shoulder, together with a concomitant inability to perform his job, was not reasonably certain to occur.

¶13 Magart also argues that lay witness testimony established his shoulder injury has impaired his ability to perform his past and current jobs and required the jury to find his earning capacity has been diminished. Specifically, he refers to his own testimony that his shoulder injury has affected his ability to do both his past and current jobs, as well as the testimony of Morgan Taylor (Taylor), a co-worker of Magart's at Door Tech, that Magart has difficulty and appears to be in pain when performing some job tasks. Magart asserts that, because this testimony was uncontroverted, the jury could not disregard it and, consequently, the verdict of zero damages for loss of earning capacity is contrary to the evidence.

¶14 Brian Cey (Cey) and Mark D'Agostino (D'Agostino), Magart's supervisors at Kenyon Noble and D'Agostino Concrete, both testified regarding Magart's employment as a cement truck driver after the accident. Cey testified that Magart was placed on light duty at work for only a short period of time following the accident and the overhead lifting was only a small part of Magart's duties. Cey also testified Magart quit working for Kenyon Noble because he had found another job, not because his shoulder injury made it difficult or impossible to do the work. D'Agostino testified he was unaware of Magart having any difficulty performing his cement truck driver duties, that Magart had never requested any special accommodation to make the work easier on his shoulder and that Magart quit working for D'Agostino Concrete because he found another job. This evidence controverts Magart's testimony that he had difficulty doing his job driving a cement truck, is sufficient

for the jury to have found that Magart's shoulder injury did not impair his ability to perform that job and supports the jury's verdict of zero damages for loss of earning capacity with regard to Magart's past employment.

¶15 With regard to Magart's current employment with Door Tech, Schank did not present any testimony contradicting Magart and Taylor's testimony that Magart experienced pain and difficulty doing his job. As stated above, a jury generally may not disregard uncontradicted, credible nonopinion evidence. Thompson, 284 Mont. at 443, 945 P.2d at 50. However, "this does not mean that where there is direct testimony in the record, uncontradicted by other direct testimony, that the court or jury is bound thereby or cannot render a decision contrary to such direct testimony." Holenstein, 166 Mont. at 66, 530 P.2d at 479. A jury is entitled to weigh the testimony against adverse circumstantial evidence and other factors which may affect the credibility of the witness. Holenstein, 166 Mont. at 66-67, 530 P.2d at 479.

¶16 In response to Magart's claim that his shoulder injury impaired his ability to perform his job with Door Tech, Schank presented a 23-minute videotape showing Magart at work unloading garage door sections from a truck, carrying tools and doing overhead work. Magart appears to be working in a normal manner with no apparent difficulties. The jury reasonably could have determined the videotape impeached Magart and Taylor's credibility and constituted substantial evidence that his shoulder injury did not impair Magart's ability to perform the Door Tech job. As a result, we conclude there was sufficient evidence to support the jury's verdict that Magart's ability to work in his present employment was not impaired by his shoulder injury.

¶17 We hold that, when viewed in the light most favorable to Schank, substantial credible evidence supports the jury's verdict of zero damages on Magart's claim for lost earning capacity.

¶18 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART