JUSTICE RICE
delivered the Opinion of the Court.
¶1 Appellant Parnacita Samson (Samson), Personal Representative for the Estate of Michael ‘Mark” Samson (Mark), appeals the jury verdict entered in the Eighth Judicial District Court, Cascade County, finding the State of Montana (State) was not negligent in the death of Mark. We affirm.
¶2 The following issues are dispositive:
¶3 1. Whether the jury’s verdict for the State was supported by substantial evidence.
¶4 2. Whether the District Court erred in admitting evidence that the shooting was an unforeseeable accident.
¶5 3. Whether the District Court erred in failing to give Plaintiff’s instruction on the meaning of negligent homicide.
FACTUAL AND PROCEDURAL BACKGROUND
¶6 The Cascade County Youth Court committed Bridger Bercier (Bercier) to Pine Hills as a serious juvenile offender in January 1995. He was fifteen years old at the time. On February 10, 1996, following Bercier’s completion of a successful home visit and continued improved behavior, Pine Hills released Bercier for a trial community placement at Youth Evaluation Program (YEP), a non-secure supervised facility in Great Falls. YEP is a licensed youth group home used to transition boys from Pine Hills to community placements. Bercier’s stay at the YEP was uneventful. However, on March 16, 1996, he walked out of the facility. Bercier’s leaving was timely reported to law enforcement.
¶7 Bercier remained at large in Great Falls for nine days. During the evening of March 25, 1996, Bercier and two other youths, Dale Brott (Brott) and Tony Samson (Tony), were socializing in the basement of the Samson family home. Bercier had been over at the Samson home earlier in the day helping the Samson family push a car off the street and into the driveway. Brott saw that Bercier had a gun that afternoon, and Bercier had the gun with him at the Samson house that evening. All three boys' were drinking beer they had retrieved from Bercier’s house. The three boys were joined by Mark, Tony’s younger brother.
¶8 Bercier passed Mark the gun without the clip. When Mark returned the gun to Bercier, all four boys were sitting on a couch. Mark sat next to Bercier on the couch. Bercier began pulling the clip in and *93 out of the gun, and cocking and uncocking the gun. Bercier then discharged one round, killing Mark. The next morning Bercier surrendered to the Great Falls police. He pled guilty to negligent homicide and was returned to Pine Hills.
¶9 Samson then brought a negligence action against the State of Montana. After a six- day trial, the jury returned a verdict for the State. Samson appeals from the judgment.
DISCUSSION
¶10 Was the jury’s verdict in favor of the State supported by substantial evidence?
¶11 We review a jury’s verdict to determine whether there is substantial credible evidence in the record to support it. Magart v. Schank, 2000 MT 279, ¶ 4, 302 Mont. 151, ¶ 4,13 P.3d 390, ¶ 4, citing Barnes v. United Industry, Inc. (1996), 275 Mont. 25, 33, 909 P.2d 700, 705. It is not our function to agree or disagree with the jury’s verdict and, consequently, if conflicting evidence exists, we do not retry the case because the jury chose to believe one party over the other. Magart, ¶ 4, citing Barnes, 275 Mont. at 33, 909 P.2d at 705. It is only in rare cases that a jury verdict should be set aside. Magart, ¶ 4. Moreover, in reviewing the sufficiency of the evidence to support a jury verdict, we review the evidence in a light most favorable to the prevailing party. Magart, ¶ 4; Morgan v. Great Falls School Dist. No. 1, 2000 MT 28, ¶ 8, 298 Mont. 194, ¶ 8, 995 P.2d 422, ¶ 8.
¶12 Samson argues that uncontradicted, credible evidence shows that the State was negligent. Samson points out that the record demonstrates Pine Hills transferred Bercier to a non-secure facility without obtaining a complete psychological evaluation during the thirteen months that he was at Pine Hills, a violation of the court order committing Bercier to Pine Hills. Additionally, Pine Hills transferred Bercier to a non-secure group home in Great Falls even though he was ineligible for leave and on disciplinary status. Moreover, the record shows the State failed to contact Bercier’s parents during the nine days between his escape from the group home and the shooting.
¶13 The State contends it presented evidence contesting that these failures constituted negligence. Testimony from the State’s witnesses explained the lack of a psychological evaluation of Bercier while he was at Pine Hills. Prior to arriving at Pine Hills, Bercier had a chemical dependency evaluation that was used in developing his treatment plan. Also, an intake evaluation of Bercier had been *94 conducted which indicated that he had no serious mental illness that would require a further psychological evaluation. In June 1996, after the shooting, a psychological evaluation of Bercier was conducted. Looking at those results, the social worker at Pine Hills testified that she would not have altered Bercier’s treatment plan in 1995 had the results of the psychological evaluation been available to her at that time.
¶14 Witnesses from Pine Hills also explained why Bercier was transferred from Pine Hills to a non-secure home in Great Falls, even though he was not eligible for leave and was on disciplinary status. When the decision to transfer Bercier to YEP was initially made, he was rated at a Level III behavioral level, the highest and most favorable level. However, at the time of transfer, Bercier had been downgraded to a Level I, due to an altercation with another person at Pine Hills. The Pine Hills team working on Bercier’s case determined that, despite the drop in his behavioral level, it was in Bercier’s best interest to transfer him because at the YEP facility he could receive chemical dependency treatment that could not be obtained at Pine Hills. In regard to Bercier’s escape, the State presented evidence that YEP had properly reported his escape to law enforcement and that the staff had no authority or responsibility to track down Bercier. The State acknowledged that staff did not contact Bercier’s parents about his escape, but offered that his parents had previously been uncooperative with the State on issues regarding Bercier’s actions and whereabouts.
¶15 It is not the duty of this Court to retry the case and evaluate the facts to determine if the State was negligent. Rather, we review a jury’s verdict to determine whether there is substantial credible evidence in the record to support it. Magart, ¶ 4. Based on a review of the record before us, we conclude there was sufficient evidence presented to support the jury’s conclusion that the State was not negligent. Therefore, we will not overturn the jury’s verdict.
¶16 Did the District Court err in admitting evidence that the shooting was an unforeseeable accident?
¶17 The standard of review for evidentiary rulings is whether the district court abused its discretion. State v. Riley (1995), 270 Mont. 436, 440, 893 P.2d 310, 313. The trial court exercises broad discretion in determining relevance of evidence. State v. Smith, 1998 MT 257, ¶ 6, 291 Mont. 236, ¶ 6, 967 P.2d 424, ¶ 6.
¶18 Samson argues the District Court erred in allowing the State to present evidence and to argue that the shooting was an “unforeseeable *95 accident.” Samson contends the court abused its discretion in denying Samson’s Motion to Disallow Testimony of Ken Baker, an expert witness for the State.
¶19 Baker has an extensive background in law enforcement, including service as chief of the behavior sciences unit of the United States Secret Service. His experience and training includes study and work in the assessment and predictability of an individual’s potential for violent behavior, particularly toward governmental and corporate officials. Baker assessed, and offered testimony regarding, the predictability of Bercier’s violence, which the District Court allowed.
¶20 The State correctly observes that Samson has appeared to abandon her challenge to Baker’s qualifications to testify as an expert under Rule 702, M.R.Evid., which was one basis for her argument in the District Court. Instead, Samson focuses on her contention that Baker, though sufficiently qualified in his particular field, did not offer testimony constituting “scientific, technical or other specialized knowledge” that would “assist the trier of fact,” as also required by Rule 702. In other words, Samson, describing Baker’s testimony as “psycho-babble,” argues that the jury was perfectly capable of determining the predictability of Bercier’s actions by assessing the evidence, and did not need, nor was assisted by, Baker’s expert testimony.
¶21 After testifying regarding his qualifications and his assessment of this matter, Baker opined that the shooting here was accidental and not predictable, focusing on factors such as his analysis of the crime scene, Bercier’s post-shooting behavior, and particularly, Bercier’s personal history. He testified:
Baker: ... I saw nothing in his background that involved weaponry.... I didn’t see in Bridger Bercier’s background crimes of violence against people. I saw lots of crimes against property and thefts and thievery and stealing and such. But I did not see crimes that involved attacking people or especially with weapons or knives or guns or that type of thing.
Def. Cnsl: Is that significant to you?
Baker: Absolutely significant.
Def. Cnsl: Why so?
Baker: Well, because the absence of that deals with predictability .... [I]n terms of predictability, it certainly makes a big difference to me after having looked at the record as to whether or not this crime was predictable in [sic] my opinion is that it was not predictable.
*96 Def. Cnsl: Well -
Baker: It was not foreseeable.
¶22 It is necessary, in order to sustain a negligence action, that the plaintiff establish a legal duty on the part of the defendant, a breach of that duty, causation, and damages. Lopez v. Great Falls Pre-Release Services, Inc., 1999 MT 199, ¶ 18, 295 Mont. 416, ¶ 18, 986 P.2d 1081, ¶ 18. Further, in LaTray v. City of Havre, 2000 MT 119, 299 Mont. 449, 999 P.2d 1010, we explained that in cases involving a dispute over the intervening criminal act of a third party, as here, foreseeability must be analyzed twice: first, with regard to the existence of a legal duty, and second, with regard to proximate causation. LaTray, ¶ 17. “[A]nalyzing foreseeability in the duty context, we look to whether or not the injured party was within the scope of risk created by the alleged negligence of the tortfeasor-that is, was the injured party a foreseeable plaintiff?” Lopez, ¶ 28. In analyzing foreseeability in the context of proximate cause, “we are concerned with whether and to what extent the defendant’s conduct foreseeably and substantially caused” the injury sustained by the plaintiff. Lopez, ¶ 32.
¶23 Further, we have explained that:
in cases involving intervening superseding acts of a criminal or noncriminal nature, “trial courts must continue to carefully review each fact situation ... on a case-by-case basis ...” Estate of Strever, 278 Mont. at 179, 924 P.2d at 674. The causal issue of intervening criminal or noncriminal acts “normally involves questions of fact which are more properly left to the finder of fact for resolution.” Estate of Strever, 278 Mont. at 178, 924 P.2d at 674.
Lopez, ¶ 34.
¶24 The State contends that it was necessary for its defense to present the testimony of Baker. Because the jury was required to determine the foreseeability of the intervening act, it needed information relating to the foreseeability of Bercier’s actions, and thus, the State argues Baker’s testimony was relevant and necessary and aided the jury.
¶25 As we held in Lopez and LaTray, determining causation requires a consideration of the foreseeability of the intervening criminal act. In LaTray, where a defendant’s liability under similar circumstances was at issue, we stated:
Here, as in Lopez, we are concerned with whether Shawn’s assault was a superseding cause of the harm incurred by LaTray which, if not reasonably foreseeable, would break the chain of causation and absolve the City of liability.
*97 LaTray, ¶ 28. See also Lacock v. 4B’s Restaurants, Inc. (1996), 277 Mont. 17, 919 P.2d 373. Thus, it was necessary for the jury to determine whether the chain of causation was broken by the unforeseeability of Bercier’s conduct, and, in that regard, Baker’s testimony offered an analysis which purported to assess predictability of Bercier’s actions. As stated above, the trial court exercises broad discretion in determining the relevancy of evidence. Smith, ¶ 6. Given the jury’s need to determine the foreseeability of Bercier’s actions, we determine that, under the particular challenge made here, the District Court did not abuse its discretion in allowing the testimony of Baker and denying Samson’s Motion to Disallow Testimony of Ken Baker.
¶26 An inconsistency has developed in our cases involving, as here, the foreseeability of an intervening cause, and it is appropriate that we resolve that conflict. In Lacock, we held that when considering foreseeability as an element of causation:
[I]t will be necessary for the court to discuss foreseeability, in the course of explaining to the jury which intervening causes sever the chain of causation and which do not. In doing so, it will be necessary to instruct the jury consistently with the provisions of § 27-1-317, MCA, that is, that the specific injury to a plaintiff need not have been foreseen.
Lacock, 277 Mont. at 22, 919 P.2d at 375-76 (emphasis added). However, despite this clear holding, language which would require a jury to determine the foreseeability of a plaintiffs “specific injury” has crept back into our opinions. See Lopez, ¶ 32, and LaTray, ¶ 28. While it was not the Court’s intention in either Lopez or LaTray to revise Lacock’s holding on this issue, the language used in those cases is clearly contradictory thereto. Therefore, we take this opportunity to resolve this inconsistency by reaffirming our holding in Lacock, confirming that in cases alleging an intervening cause, juries must be instructed that the specific injury to the plaintiff need not have been foreseen.
¶27 Did the District Court err in failing to give Plaintiffs instruction on the meaning of negligent homicide?
¶28 It is within a district court’s discretion to decide how to instruct the jury, taking into account the theories of the contending parties. Allison v. Town of Clyde Park, 2000 MT 267, ¶ 11, 302 Mont. 55, ¶ 11, 11 P.3d 544, ¶ 11. This Court will not overturn a district court for instructions given to a jury without an abuse of discretion. Allison, ¶ 11. This Court reviews the instructions as a whole and in light of all the instructions and the evidence introduced at trial. Federated Mut. *98 Ins. Co. v. Anderson, 1999 MT 288, ¶ 44, 297 Mont. 33, ¶ 44, 991 P.2d 915, ¶ 44. Absent prejudice, the trial court’s decision will be affirmed. Federated Mut., ¶ 44. No prejudice can be shown where the jury instructions in their entirety state the applicable law of the case. Federated Mut, ¶ 44.
¶29 Samson argues that the District Court abused its discretion in rejecting her proposed jury instruction defining the mental state of negligent homicide. Samson’s proposed instruction reads as follows:
Instruction No. 30: In this case, you, the jury, must accept as conclusively established that Bridger Bercier, in his answering true to the accusation in Youth Court that he committed the crime of negligent homicide, admitted that his conduct toward Michael “Mark” Samson, in causing his death, was a “gross deviation from the standard of care.” For purposes of this case and for your deliberations, you are to accept as conclusive that Bridger Bercier’s conduct toward Michael “Mark” Samson was “a gross deviation from the standard of care.”
¶30 Without this instruction, Samson claims it was impossible for the jury to understand the significance of Bercier’s guilty plea to the charge of negligent homicide and, thus, the jury could not place Bercier’s guilty plea within the proper context. By denying Samson’s instruction, Samson asserts that the jury was left with only Instruction No. 10's definition of negligence, given to judge the State’s conduct herein, and was therefore required, even “directed,” to conclude therefrom that Bercier had admitted only to the lack of ordinary or reasonable care when he pled guilty to negligent homicide. Samson then posits that, because of this misdirection, the jurors were not instructed in a manner that would allow them to appreciate that the State was making what Samson contends was an “inconsistent” argument-that the State could charge and accept a plea from Bercier for negligent homicide and then also argue in this action that the shooting was an unforeseeable accident. Samson contends that it was a gross injustice for the State to take these inconsistent positions, and error for the District Court to deny her instruction meant to highlight the State’s fundamentally unfair posture.
¶31 Samson relies on this Court’s holdings in Rix v. General Motors (1986), 222 Mont. 318, 723 P.2d 195, and Chambers v. Pierson (1994), 266 Mont. 436, 880 P.2d 1350, to claim the District Court committed reversible error. In those cases we stated, “A party has a right to jury instructions adaptable to his theory of the case when the theory is supported by credible evidence. It is reversible error to refuse to *99 instruct on an important part of a party’s theory of the case.” Rix, 222 Mont. at 323, 723 P.2d at 198.
¶32 The State argues that it was not necessary for the District Court to instruct the jury on the mental state of the crime of negligent homicide. According to the State, when taken as a whole, the instructions given by the District Court properly instructed the jury on the State’s duty of custody and supervision, set out the elements for recovery based on negligence, defined negligence, and instructed the jury to find the State liable if the State’s negligence was a cause of the death of Mark Samson. The State asserts the instructions properly included the key concepts in this wrongful death action. Relying on Busta v. Columbus Hosp. Corp. (1996), 276 Mont. 342, 916 P.2d 122, the State contends trial courts should not instruct on related legal concepts which do not control issues before the jury. According to the State, the mental state of Bercier at the time he committed the crime was not a controlling issue in the wrongful death case, and the District Court properly exercised its discretion in denying Samson’s proposed Instruction No. 30.
¶33 On appeal, Samson has not argued that the State was in any way estopped by the homicide proceeding from defending this action with a foreseeability-related causation defense. In the District Court, Samson argued that the State was judicially estopped from offering its foreseeability theory, and tendered Instruction No. 30 in conjunction with that estoppel defense, which was denied. Here, Samson simply challenges the denial of the instruction itself, without the accompanying estoppel argument.
¶34 Samson also offered Instruction No. 30 to boost her own foreseeability theory, which defined Bercier’s conduct as reckless and postulated therefrom that it was foreseeable because of his background. Using this argument, Samson sought to undermine the State’s contention that this was an accidental shooting which could not have been foreseen.
¶35 However, the fundamental issue in this wrongful death action concerned the State’s negligence, not the mental state of Bercier, and the instructions given by the District Court properly reflected that. When viewed in their entirety, the jury instructions given by the District Court properly stated the applicable law of the case. As such, the instructions given were adaptable to Samson’s argument, and it was within the District Court’s discretion to deny the proposed instruction.
¶36 Further, the denial of the proposed instruction did not *100 prejudice Samson’s case, as Samson was nonetheless able to present her foreseeability theory. Of course, it was not lost on anyone involved in the trial, including the jury, that this tragic incident arose from an utter lack of caution or care. Samson’s counsel elicited from the deputy county attorney who prosecuted Bercier that he had determined that Bercier’s actions constituted “a gross deviation from the standard of care,” from which Samson’s counsel argued in his closing argument that the shooting was much more than an accident. Therefore, while the proposed instruction may have been helpful to Samson’s presentation, she was not prevented from asserting her theory on the foreseeability of this tragedy under the instructions which were given, and thus, sustained no prejudice as a result of the District Court’s denial.
¶37 Finding no abuse of discretion nor prejudice to the plaintiff herein, the decision of the District Court is affirmed.
JUSTICES NELSON and REGNIER concur.